**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | : | Case No. |
| as subrogee of Yokohama Off-Highway Tires America, Inc. | : | **25-7130** |
| and Camfil USA Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| – against – | : | **VERIFIED COMPLAINT** |
| | : | |
| Defendant MSC MEDITERRANEAN | : | |
| SHIPPING COMPANY S.A., *in personam* | : | |
| | : | |
| – and – | : | |
| | : | |
| M/V MSC ANTONIA, her engines, tackle, equipment, | : | |
| and furnishings, etc., *in rem*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------------------ X

Plaintiff Zurich American Insurance Company, as the subrogated insurer of non-parties Yokohama Off-Highway Tires America, Inc. and Camfil USA Inc., as and for its Verified Complaint against Defendant MSC Mediterranean Shipping Company S.A., *in personam*, and the M/V MSC ANTONIA, *in rem*, alleges upon information and belief as follows:

## PARTIES

1.    Plaintiff American Insurance Company ("Zurich") is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007, and its principal place of business located at

1299 Zurich Way, Schaumburg, Illinois 60196. It is authorized to transact business and has transacted business in this State.

2.      At and during all the times hereinafter mentioned, Plaintiff was the insurer of non-party Yokohama Off-Highway Tires America, Inc. and its affiliates ("Yokohama") pursuant to a certain cargo insurance policy and became subrogated to the rights of Yokohama upon indemnifying said interests for the damage to the cargo described herein.

3.      At and during all the times hereinafter mentioned, Plaintiff was the insurer of non-party Camfil USA Inc. and its affiliates ("Camfil") pursuant to a certain cargo insurance policy, and became subrogated to the rights of Camfil upon indemnifying said interests for the damage to the cargo described herein.

4.      Plaintiff's subrogors are shippers, consignees, and/or receivers of the cargo described herein, and/or a party with a proprietary interest in the cargo, and/or a party owning, or holding or entitled to possession of, the cargo or the bill of lading and/or the waybill or shipping document described herein.

5.      Plaintiff brings this action on its own behalf and as agent, assignee, subrogee (equitable or otherwise), and/or trustee on behalf and for the interest of all parties who may be, or become, interested in the said cargo, as their respective interests may ultimately appear, and Plaintiff is entitled to maintain this action.

6.      Defendant MSC Mediterranean Shipping Company S.A. ("MSC") is a foreign business entity duly domiciled and existing under and by virtue of the laws of a jurisdiction outside of the United States, with its principal place of business located at Chemin Rieu 12, 1208 Geneva, Switzerland.

7.      At the time of the filing of this Complaint, Defendant MSC maintained an office and place of business located at 420 Fifth Avenue, 8th Floor, New York, New York 10018.

8.      At and during all the times hereinafter mentioned, the M/V MSC ANTONIA (the "Vessel") was and is a 2009-built Liberian-flagged containership, assigned IMO No. 9398216, that was employed in the common carriage of goods by water for hire and was in a liner service, whereby it was scheduled to load and/or discharge cargoes at ports along the East Coast of the United States, including but not limited to the Port of New York & New Jersey.

9.      The Vessel now is, or will be during the pendency of this action, within this district and the jurisdiction of this honorable Court.

10.     At and during all the times hereinafter mentioned, Defendant directly or through its agents, intermediaries, representatives, and/or affiliates was engaged as a common carrier for hire of property to customers in the State of New York, and regularly does or solicits business, and/or engages in a persistent course of conduct, and/or derives substantial revenue from goods used or services rendered, in this State.

11.     At and during all the times hereinafter mentioned, Defendant maintained continuous and systematic contacts with the State of New York.

12.     At and during all the times hereinafter mentioned, Defendant was and now is engaged in business as a common carrier of goods for hire, issuing bills of lading and/or waybills for the common carriage of cargo aboard certain ocean-going vessels, including the M/V MSC ANTONIA, which was scheduled to load and/or discharge cargoes at ports in the United States, including but not limited to the Port of New York & New Jersey.

## JURISDICTION AND VENUE

13.    This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333 (2022), as will more fully appear, and is an admiralty or maritime claim within the meaning of, and is designated as such pursuant to, Rule 9(h) of the Federal Rules of Civil Procedure.

14.    To the extent that Plaintiff asserts any claim not within this Court's original jurisdiction, Plaintiff invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (2022).

15.    The venue of this action is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(3) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, including in particular the intended delivery of the subject cargo and because Defendant is not resident in the United States.

16.    Venue and personal jurisdiction over the Defendant are proper in this Court pursuant to the provisions purportedly contained in the Defendant's bill of lading, which provides for disputes to be resolved in this District for the cargo shipments at issue.

## STATEMENT OF THE CLAIMS

17.    In or about July 2024, entities with proprietary or possessory interests in certain cargo (described more fully in Schedule A hereto and hereinafter referred to as the "Shippers" and the "Cargo," respectively) agreed, contracted with, or otherwise engaged the Vessel and Defendant MSC (and/or its agents, intermediaries, representatives, and/or affiliates) to transport said Cargo.

18.    On or about the aforementioned date and at the ports/places of origin stated in Schedule A, the Shippers delivered the Cargo, in good order and condition and which was stowed in the containers identified in Schedule A, to the Defendant (and/or agents, intermediaries, representatives, and/or affiliates, including the Vessel), who received, accepted, and agreed to

transport the Cargo for consideration, directly or indirectly, to the ports/places of destination stated in Schedule A, there to be delivered in the same good order and condition as when received.

19.     The Shippers tendered the Cargo in good order and condition for common carriage by sea, to or from ports of the United States, in foreign trade, under a contract evidenced by Defendant's bill of lading, waybill, and/or receipt, which Defendant assigned the unique numbers set forth in Schedule A.

20.     Defendant accepted the Cargo without objection or exception.

21.     Defendant directly or indirectly by others for whom Defendant is responsible or vicariously liable, or whose actions or inactions are imputed to Defendant, carried the Cargo on one or more ocean going vessels, including the Vessel MSC ANTONIA.

22.     While the Cargo was in the care, custody, and/or control of the Vessel and the Defendant and/or others for whom Defendant is responsible or vicariously liable, the Cargo was lost when the containers holding said Cargo fell overboard from the Vessel whilst in the seas along the coast of South Africa on or about August 28, 2024.

23.     As a result of the aforementioned lost Cargo, Plaintiff's subrogors suffered damages in an amount no less than $530,819.67.

24.     Pursuant to the terms of the insurance policies Plaintiff issued to its subrogors, and because of the lost Cargo described herein, Plaintiff was compelled to pay and did pay its subrogors the sum of $530,819.67 and Plaintiff thereupon became subrogated to all the rights and remedies available to its subrogors by virtue of the events described herein.

25.     Plaintiff and all parties to said contract of carriage for whom Plaintiff may be responsible have performed all terms and conditions of said contract of carriage on their part required to be performed not otherwise excused or waived, including the payment of freight.

26.    By reason of the foregoing, Plaintiff sustained damages in a sum not less than $530,819.67 as nearly as can be estimated.  Said sum has not been paid although duly demanded and remains owing to Plaintiff from Defendant.

## FIRST CAUSE OF ACTION

27.    Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "26" of this Complaint as if fully set forth herein.

28.    At and during all the times hereinafter mentioned, the Vessel was a ship used for the carriage of goods by sea within the meaning of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, statutory note following (2022).

29.    At and during all the times hereinafter mentioned, the Defendant was the owner and/or charterer of the Vessel, entered into the contracts of carriage identified in Schedule A, and was a carrier within the meaning of COGSA.

30.    In consideration of certain freight charges paid or agreed to be paid, the Defendant agreed to receive, transport by sea, and deliver the Cargo from the ports/places of origin to the ports/places of destination (stated in Schedule A) in good order and condition and the Vessel undertook such ocean carriage.

31.    Plaintiff's subrogors tendered the Cargo in good order and condition, but the Defendant, directly or indirectly by others for whom Defendant is responsible or vicariously liable, lost the Cargo prior to discharge at the intended final destination with the intended consignees (stated in Schedule A).

32.    The loss of the Cargo was proximately caused in whole or in part by events during ocean carriage when the Cargo was in the actual, constructive, and/or contractual custody of the Vessel and Defendant or by others acting on Defendant's behalf and for whom Defendant is liable.

33.     By reason of the foregoing, the Plaintiff sustained actual loss or injury in an amount not less than $530,819.67 as nearly as can be estimated and for which the Vessel and Defendant are strictly liable as common carriers of the Cargo under COGSA and the maritime common law.

## SECOND CAUSE OF ACTION

34.     Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "26" of this Complaint as if fully set forth herein.

35.     Plaintiff's subrogors maintained agreements and/or written contracts of carriage with Defendant, pursuant to which, for monetary consideration, Defendant was responsible for the transportation of the Cargo, under a receipt or bill of lading, from the ports/places of origin to the ports/places of destination (stated in Schedule A).

36.     On or about the aforementioned date and at the ports/places of origin stated in Schedule A, the Cargo was delivered to Defendant in good order and condition, suitable in every respect for the intended carriage, and Defendant received, accepted, and agreed to transport the Cargo for consideration promptly to the final destination and deliver it to the designated consignee in good order.

37.     Plaintiff's subrogors have performed all conditions, covenants, and promises on their part to be performed, else such were excused or waived.

38.     Defendant breached its agreements and/or contracts with Plaintiff's subrogors by failing to safely carry and deliver in good order the Cargo to its intended final destination and consignee.

39.     As a direct and proximate result of the aforementioned breaches, Plaintiff has suffered damages in an amount not less than $530,819.67 as nearly as can be estimated.

## THIRD CAUSE OF ACTION

40.     Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "26" of this Complaint as if fully set forth herein.

41.     On or about the aforementioned date and at the ports/places of origin stated in Schedule A, the Cargo was delivered to the Vessel and Defendant in good order and condition, suitable in every respect for the intended carriage, and the Vessel and Defendant received, accepted, and agreed to transport the Cargo promptly to the final destination and deliver it to the designated consignee in good order.  As such, the Vessel and Defendant owed a duty to Plaintiff and/or its subrogors to use reasonable care in the transportation of the Cargo, including all reasonable steps to ensure the Cargo reached its destination in good order and condition.

42.     The Vessel and Defendant, or those for whom Defendant is liable, owed a duty to all interests of the Cargo carried aboard the Vessel to exercise due diligence to provide a seaworthy ship, to properly man, equip, and supply the ship, to make the holds and all other parts of the ship in which goods were carried fit and safe for their reception, carriage, and preservation, to coordinate the receipt, acceptance, loading, and delivery of the Cargo to the ports/places of destination in good order and condition, and to properly load, handle, stow, carry, keep, and care for all Cargo.

43.     The Vessel and Defendant, or those for whom Defendant is liable, negligently failed to transport the Cargo, failed to take reasonable measures to prevent the loss of the Cargo, breached and violated their duties as providers of transportation services and their obligations as common carriers of said Cargo, negligently failed to deliver the Cargo, breached their duty of seaworthiness, and otherwise failed to act within the common law standard of care required of a carrier of goods for hire.

8

44.    As a direct and proximate result of the aforementioned breaches, Plaintiff has suffered damages in an amount not less than $530,819.67 as nearly as can be estimated.

### FOURTH CAUSE OF ACTION

45.    Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "26" of this Complaint as if fully set forth herein, except that the cause of action hereinafter set forth is alleged in the alternative to the extent that the prior causes of action are deemed inapplicable (in whole or in part) to the Vessel and/or the Defendant.

46.    The Cargo was tendered to Defendant in trust for the specific purpose of transporting it, with an agreement, express or implied, that the trust shall have been faithfully executed, and the Cargo delivered or duly accounted for when the special purpose of transport was accomplished, or kept until the bailor reclaimed it.

47.    The Vessel and Defendant were acting as bailees of the Cargo at the time it was lost.

48.    The Vessel and the Defendant, by itself and/or through its agents, contractors, representatives, servants, subcontractors, and/or sub-bailees for whom Defendant is liable, had a legal duty to carry and care for the Cargo in accordance with Plaintiff's subrogors' instructions and deliver the Cargo in good order and perform their services in a proper and workmanlike manner.

49.    The Vessel and Defendant breached their obligations, including their bailment obligations, by failing to carry and care for the Cargo in accordance with Plaintiff's subrogors' instructions and by failing to deliver the Cargo in as good condition as when the Cargo was entrusted to the Vessel and the Defendant.

50. As a direct and proximate result of the aforementioned breaches, Plaintiff has suffered damages in an amount not less than $530,819.67 as nearly as can be estimated.

**FIFTH CAUSE OF ACTION**

51. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "44" of this Complaint as if fully set forth herein.

52. By reason of the premises aforesaid, the Vessel breached its statutory, contractual, and/or common law duties and obligations, including its duty of seaworthiness and otherwise failed to act within the required standard of care.

53. Plaintiff is entitled to a maritime lien in the amount of its damages and further entitled to arrest the Vessel under Rule C of the Supplemental Rules of Civil Procedure for Certain Admiralty Claims.

**WHEREFORE**, Plaintiff Zurich American Insurance Company, as subrogee, respectfully prays:

(i) that process be issued against the Defendant in due form of law according to the practice of this honorable Court, citing it to appear and answer the foregoing;

(ii) that a warrant be issued pursuant to Supplemental Admiralty Rule C for the arrest of the Vessel consisting of principally her engines, tackle, equipment, and furnishings, etc., and that all persons claiming interest in the Vessel be cited to appear and answer the matters stated herein;

(iii) that the Vessel be condemned and sold to satisfy the judgment;

(iv) that judgment to be entered in its favor and against Defendant MSC Mediterranean Shipping Company S.A., in the amount of Plaintiff's damages, plus interest and costs; and

(v) for such other and further relief this Court may deem just, equitable, and proper.

Dated: August 27, 2025
      New York, New York

Respectfully submitted,

GIULIANO MCDONNELL & PERRONE, LLP
*Attorneys for* Plaintiff Zurich American Ins. Co.

By:          s/William M. Fennell
      William M. Fennell, Esq.
      5 Penn Plaza, 23rd Floor
      New York, New York 10001
      Tel: 646-328-0120
      Email: WFennell@GMPlawfirm.com
      Reference No.:  J143

## VERIFICATION

I, **FRANCINE SCHWARTZ-PIPOVIC**, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

I am the Marine Cargo Recovery Litigation Specialist for Zurich American Insurance Company ("Zurich"), the Plaintiff herein. I have read the foregoing Complaint and know the contents thereof and the same is true of my own knowledge, except as to the matters therein stated upon information and belief and as to those matters I believe them to be true.

The reason I make this verification is that Zurich is a corporation and I the manager responsible for the subrogated claims at issue in the Complaint.

The sources of my information and the grounds of my belief as to all matters not stated in the Complaint to be alleged upon my own knowledge are reports made to me by employees, surveyors, investigators, and/or witnesses, and the records of the corporation.

Executed on August 27, 2025, Schaumburg, Illinois.

*Francine B. Pipovic*

**FRANCINE SCHWARTZ-PIPOVIC**